# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUIS ROBLES, # Y-14824, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17-cv-953-NJR |
| C/O SPILLER, C/O CLARK, LT. WOLFE, MAJOR LIVELY, AMY WILLIAMS, NANCY KNOPE, DR. SCOTT, CHRISTINE BROWN, and WARDEN LASHBROOK, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition, and that Defendant Wolfe discriminated against him on the basis of his racial/ethnic background. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### The Complaint

On November 4, 2016, Plaintiff injured his left knee while playing soccer at Pinckneyville (this was an approved recreational activity). (Doc. 1, p. 4). He could not walk on his own. He immediately notified Lt. Wolfe that he was injured and needed medical attention.

Wolfe refused to call for help, telling Plaintiff that he did not like "people like you." (Doc. 1, p. 5). Plaintiff is a United States citizen originally from Mexico; he assumed Wolfe was referring to his Hispanic background when he refused to summon medical assistance. Additionally, Wolfe was aware that Plaintiff could not walk on his own and had an injury requiring medical care. (Doc. 1, p. 6).

Two other inmates helped Plaintiff back to his cell. That movement was excruciatingly painful, and Plaintiff could feel tissue in his knee tearing. On the way, Plaintiff told C/O Clark that he could not walk and needed to go to the HCU (Health Care Unit). Clark told Plaintiff that she would not call in a medical emergency but would inform the next shift of his needs. (Doc. 1, p. 7).

Nobody came to assist Plaintiff during the next shift, so he relayed a message to Wing Officer Spiller through an inmate porter that he could not walk because of his injury and needed medical attention. The inmate returned shortly and relayed Spiller's response that Plaintiff should submit a sick-call request. (Doc. 1, p. 7). Plaintiff climbed to his top bunk, which caused more pain and tissue tearing. He was in too much pain to climb down to go to dinner. Plaintiff's cellmate informed Major Lively of Plaintiff's injury and his need for immediate medical care. Lively wrote down the information and promised the cellmate he would check it out, but he failed to follow up on the request. When no help came, Plaintiff's cellmate filled out a sick-call form for Plaintiff and gave it to a nurse that evening.

The next day, November 5, 2016, Plaintiff saw Nurse Williams during sick call. He had to hop on one leg in order to get there, and he suffered more pain and tissue damage as a result. (Doc. 1, p. 9). Plaintiff explained to Williams that he was unable to walk, could not get to meals, and could not access the top bunk without severe suffering. Williams offered Plaintiff ibuprofen

but told Plaintiff nothing else could be done until he saw the doctor on Monday, November 7.

On November 7, when nobody came to take Plaintiff to the HCU, he hopped to the phone and called his mother. She in turn called Warden Lashbrook to relay Plaintiff's condition and ask that he be given crutches or a wrap to immobilize the knee. Around 2:30 p.m. that afternoon, Plaintiff was taken to the HCU in a wheelchair. (Doc. 1, p. 10). Nurse Knope gave Plaintiff crutches, but did not wrap or immobilize his knee, or allow him to see the doctor. Plaintiff continued to suffer excruciating pain and stress to his knee while walking with the crutches. (Doc. 1, p. 11).

On November 8, Plaintiff again called his mother to say he had not yet seen a doctor and the pain was nearly unbearable. Later that day, Plaintiff was taken to the HCU, where he saw Dr. Scott. Dr. Scott berated Plaintiff for having his family call and told him his situation was not an emergency because he had returned to his cell "just fine after the injury" and had been going to chow. Plaintiff responded that those statements were a lie; he had gone to the dining hall only once since receiving his crutches and did not try again because it was too hard to maneuver over the wet floor. (Doc. 1, p. 12). Dr. Scott wrapped Plaintiff's knee with a cloth bandage, gave him two 400 mg ibuprofen pills, and ordered an x-ray.

Dr. Scott issued Plaintiff a bottom-bunk permit, which Plaintiff received on November 11. Plaintiff's cellmate already had a low-bunk permit, however, and Plaintiff stayed on the top bunk because the cellmate was an older man in his sixties. Plaintiff continued to suffer tissue damage from climbing to the top bed.

On November 17, Dr. Scott told Plaintiff that the x-rays showed no broken bones, and he recommended physical therapy for what was likely ligament damage. Plaintiff told Dr. Scott that he was unable to use the bottom bunk despite the permit, but Dr. Scott responded that it was not

his problem, and he would do nothing else. (Doc. 1, p. 13).

On January 9, 2017, Plaintiff was screened for physical therapy, but was informed it would not help his injury. On February 7, 2017, Plaintiff was sent to an outside hospital for an MRI. He learned on March 16, 2017, that the test revealed "extensive ligament displacement and damage." (Doc. 1, p. 13). Dr. Dan (who is not a Defendant) planned to give Plaintiff 8-12 weeks of physical therapy to try to realign the misplaced ligaments. Between March 16 and May 4, 2017, Plaintiff had seven therapy sessions. Dr. Dan then ended the therapy and sent Plaintiff to a specialist at the Orthopedic Institute of Southern Illinois, where on May 30, 2017, he had more x-rays and two injections into his knee. (Doc. 1, p. 14). Plaintiff still struggles to mobilize. His pain medication has been interrupted, and he must buy his own meals from the commissary because he cannot navigate over the wet dining room floor with his crutches.

On January 3 and March 9, 2017, Plaintiff wrote to Health Care Administrator Brown to tell her of his severe pain, his difficulties in continuing to receive prescribed medication, the worsening of his condition, and inadequate medical care. (Doc. 1, p. 14). For example, the pain medication prescribed by Dr. Scott would only last for twelve days, and Nurse Williams refused to issue more medication or schedule Plaintiff to see Dr. Scott to receive more. (Doc. 1, p. 15).

Plaintiff lists a number of steps that each Defendant could have taken, but did not, that would have protected him against further knee damage and pain. (Doc. 1, pp. 18-20).

As relief, Plaintiff seeks a declaratory judgment and an injunction to require Dr. Scott to issue Plaintiff a knee brace, and to direct Lashbrook to have Plaintiff's meals served to him in his cell while he is on crutches. He also seeks compensatory and punitive damages. (Doc. 1, pp. 22-23).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Fourteenth Amendment claim against Wolfe for violating Plaintiff's right to equal protection, for refusing to summon medical assistance for Plaintiff's injured knee because Plaintiff is Hispanic;

**Count 2:** Eighth Amendment deliberate indifference claim against Wolfe, Clark, Spiller, Lively, and Lashbrook, for failing to request medical treatment for Plaintiff's injured knee after being informed that he was unable to walk and was in severe pain;

**Count 3:** Eighth Amendment deliberate indifference claim against Williams, Knope, Scott, and Brown, for delaying treatment and failing to provide necessary medical treatment for Plaintiff's injured knee;

**Count 4:** Eighth Amendment deliberate indifference claim against Scott and Lashbrook for failing to arrange for Plaintiff to have a bottom bunk so that he would not have to climb to the top bunk on his injured knee.

As explained below, Counts 1, 2, and 3 survive review under §1915A and shall proceed for further consideration against some of the Defendants. Count 4 fails to state a claim upon which relief may be granted, however, and it shall be dismissed without prejudice.

## Count 1 – Equal Protection

To state an equal protection claim for racial discrimination, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). As the Seventh Circuit explained,

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Here, Wolfe's stated reason for refusing to call for medical assistance for Plaintiff was that he did not like people like him. The comment implies that Wolfe was treating Plaintiff differently because of his Hispanic ethnicity. At this stage, Plaintiff has stated an equal protection claim that survives review under § 1915A, and he may proceed with **Count 1** against Wolfe.

### Count 2 – Deliberate Indifference – Correctional Officers

A claim for deliberate indifference to a serious medical condition has two elements. In order to state a cognizable claim, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant knew of a risk to the inmate of serious harm from that condition, yet acted or failed to act in disregard of that risk. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such

delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

The seriousness of Plaintiff's knee injury was obvious due to his inability to walk and his severe pain. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

Wolfe and Clark observed Plaintiff after his injury, and Plaintiff told them about his symptoms when he requested help. Despite this knowledge, Wolfe refused to seek medical assistance for Plaintiff. Clark also declined to call for help when Plaintiff asked her to send him to the HCU. Whether or not she informed the next shift of Plaintiff's situation, Clark created further delay before Plaintiff was able to see a medical provider. Plaintiff's deliberate indifference claim may proceed against both Wolfe and Clark.

Plaintiff did not speak directly to Spiller or Lively, but his factual allegations indicate that these officials were informed by other inmates about Plaintiff's serious injury and his urgent need for medical care. Spiller did not call for medical help, but instead told Plaintiff to fill out a sick call request. Lively did not respond when Plaintiff's cellmate asked him to summon medical assistance. At this stage, Plaintiff's claims against Spiller and Lively also may proceed for further review.

Lashbrook, however, will be dismissed without prejudice from the deliberate indifference claim in Count 2. Both times that Lashbrook was contacted by Plaintiff's mother (on November 7 and 8, 2016), it appears that she took action to see that Plaintiff was taken to the Health Care Unit. When Plaintiff saw Dr. Scott on November 8, he made it a point to tell Plaintiff that he was

not happy that Plaintiff's family had called the prison and to say that he was ordering x-rays based on his own judgment and not because of the phone call. This sequence of events indicates that Lashbrook responded appropriately when she learned that Plaintiff needed medical care. The Complaint thus does not support a claim against her for deliberate indifference.

**Count 2** shall proceed only against Wolfe, Clark, Spiller, and Lively.

### Count 3 – Deliberate Indifference – Medical Providers

As noted above under Count 2, Plaintiff's knee injury presented an objectively serious medical condition. Delays in treatment caused by medical providers may amount to deliberate indifference. Relevant to this claim, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but it does require "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a medical provider's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Nurse Williams was the first medical provider to evaluate Plaintiff on the day after his injury. She offered him ibuprofen for the pain, but did nothing else (such as issuing him crutches or wrapping the knee) that might have relieved his discomfort or protected him from further injury. Further, she put off any additional care until two days later. Given the severity of Plaintiff's injury and the accompanying pain, Williams's minimal response and postponement of further medical attention for Plaintiff may amount to deliberate indifference. Count 3 shall therefore proceed against Williams.

Plaintiff saw Nurse Knope on Monday, November 7, which was the day he had hoped to see a doctor. Knope gave Plaintiff crutches after he was taken to the HCU in a wheelchair, but

did not wrap or immobilize his knee. It does not appear that she gave Plaintiff anything for pain relief, and Plaintiff claims that she did not allow him to see a doctor on that date. Knope's minimal treatment and further delay to Plaintiff's doctor visit may also sustain a deliberate indifference claim. Therefore, Knope shall also remain in Count 3.

Dr. Scott initially saw Plaintiff on November 8, when he wrapped the knee, issued pain medication, ordered an x-ray, and issued the low-bunk permit. Those reasonable measures do not indicate deliberate indifference. It is not clear whether Dr. Scott shared responsibility for putting off Plaintiff's initial visit to him until four days after the injury, but if so, that delay could support a deliberate indifference claim. In addition, Plaintiff states that over the ensuing months, he ran out of pain medication several times and had difficulty obtaining an adequate supply to help him with the ongoing pain symptoms. Plaintiff also experienced a lengthy delay before he had the MRI on February 7. Because the medication interruptions and delays may support a deliberate indifference claim against Dr. Scott, Count 3 also shall proceed against him at this juncture.

Finally, Plaintiff sought help from HCU Administrator Brown by writing to her on January 3 and March 9, 2017. She thus became aware of Plaintiff's inability to obtain a reliable and sufficient supply of pain medication, as well as the delays and deficiencies in his medical care. It is not clear whether Brown responded appropriately to Plaintiff's communications. Brown, therefore, also shall be ordered to answer to the deliberate indifference claim in Count 3.

To summarize, **Count 3** shall proceed against Williams, Knope, Scott, and Brown.

### Dismissal of Count 4 – Bottom Bunk Permit

Plaintiff seeks to hold Dr. Scott and Warden Lashbrook liable for failing to take measures to relocate Plaintiff to a cell where he could occupy the bottom bunk, in accordance with the low-bunk permit issued to him by Dr. Scott. The permit did not help Plaintiff while he remained

in the cell with the older cellmate who also had a low-bunk permit for medical reasons. Plaintiff claims that Dr. Scott should have acted to make sure that Plaintiff would be placed where he could get a bottom bunk, after Plaintiff told Scott that he was unable to use the permit in his current cell. (Doc. 1, p. 13). Dr. Scott told Plaintiff that he would not do anything else for him.

While Dr. Scott was aware of Plaintiff's ongoing problems with having to climb to the upper bunk, there is no indication that Dr. Scott had the power to correct that situation, beyond issuing the low-bunk permit. It is not apparent that it was Dr. Scott's job to reassign an inmate to a different cell, which is what the facts suggest Plaintiff would need in order to take advantage of the low-bunk permit. In fact, Plaintiff blames the "placement office" for assigning both him and his cellmate to the same bottom bunk. (Doc. 1, p. 12). Here, Dr. Scott took the reasonable step of issuing Plaintiff a medical permit for a lower bunk. The facts do not support a deliberate indifference claim against Scott for drawing the line after that action, when it appears that it was the job of some other official to move Plaintiff to another cell, if Plaintiff had requested such a change. Count 4 shall thus be dismissed without prejudice against Dr. Scott.

As for Warden Lashbrook, she presumably would have the authority as warden to have Plaintiff reassigned to a cell where he could occupy a bottom bunk. Plaintiff never alleges in the Complaint, however, that he ever asked Lashbrook to move him to a different cell. (Indeed, Plaintiff never states that he requested a cell change from any other prison official besides Dr. Scott.) Before Plaintiff can maintain a deliberate indifference claim against Lashbrook for failing to place him in a cell where he could have a lower bunk, he must demonstrate that he notified her about the low-bunk permit and asked for a cell reassignment, and then that she failed to take action to have Plaintiff moved. Because the Complaint reveals no such sequence of events, the claim in Count 4 against Lashbrook shall be dismissed without prejudice.

**Count 4** shall be dismissed from the action without prejudice for failure to state a claim upon which relief may be granted.

## Injunctive Relief

Plaintiff is seeking injunctive relief, specifically, an order that he be provided with a knee brace and that his meals should be served to him in his cell. (Doc. 1, p. 22-23). He has not filed a separate motion to request the Court to consider those issues while this case proceeds. In the event that the Court deems injunctive relief to be necessary, the current Pinckneyville Warden would be the appropriate party to implement any such measures. Therefore, the Clerk shall be directed to add the current Warden of Pinckneyville, in her official capacity only, as a party Defendant in this action. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d);[1] *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

## Disposition

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **LASHBROOK** is **DISMISSED** from this action without prejudice.

The Clerk is **DIRECTED** to add the **WARDEN of PINCKNEYVILLE**

---

[1] Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 17(d) provides: "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

**CORRECTIONAL CENTER (official capacity only)** as a party Defendant in this action.

As to **COUNTS 1, 2, and 3,** Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **SPILLER, CLARK, WOLFE, LIVELY, WILLIAMS, KNOPE, SCOTT, BROWN,** and **WARDEN of PINCKNEYVILLE CORRECTIONAL CENTER (official capacity).** However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on these Defendants, **IT IS ORDERED** that Plaintiff **SHALL FILE** a Motion for Service of Process at Government Expense, within 28 days of the date of entry of this order (on or before **November 21, 2017**). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing this motion.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendants **SPILLER, CLARK, WOLFE, LIVELY, WILLIAMS, KNOPE, SCOTT, BROWN,** and **WARDEN of PINCKNEYVILLE CORRECTIONAL CENTER (official capacity)** served with a summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.[2] Plaintiff is advised that only a non-party may serve a summons. FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a motion for service of process at government expense within 28 days as ordered, the

---

[2] Federal Rule of Civil Procedure 4(m) provides that service on each defendant must be accomplished within 90 days.

Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: October 24, 2017**

                                                   **NANCY J. ROSENSTENGEL**
                                                   **United States District Judge**